Caldwell, J.
This is a bill filed by Eassett & Co., who are creditors of Henry Traber, for the purpose of reaching certain *460 .property of his, which they allege has been fraudulently transferred, for the purpose of defrauding creditors.
The facts, as exhibited by the evidence in the case, are substantially these: Ón May 11, 1849, the complainants, who reside in Philadelphia, recovered a judgment, in the commercial court of Cincinnati, against the defendant Henry Traber, for the sum of $958. On May 12, 1849, an execution was issued on said judgment, and levied on the 14th of the same month on a house and lot in Rossville, Butler county, the place of residence of the said Henry Traber.
Traber had been, for some time previous to this, doing business in Rossville, as a merchant; and, on the 11th of May, the same •day on which the judgment was recovered, and three days before the levy was made, he gave to Traber and Aubery a mortgage on the lot above referred to, and sold out his store of goods to his clerk and brother-in-law, Cornelius Baird, for the sum of $2,500. Henry Traber received from Baird, as a part consideration of the store, his two notes for $673.37 each, payable, respectively, in four and six months; which two notes were, on the same day, assigned by him to Traber & Aubery. He, at the same time, gave a mortgage to Traber & Aubery for $200, on certain household property. The mortgage on the lot, the mortgage on the household property, as well as the assignment of the notes, are claimed by defendants to have been made to secure Traber & Aubery against the acceptance of two drafts drawn by Henry Traber on them, in favor of Hallowell & Co., of Philadelphia, which drafts were drawn in March, 1849, payable in six and twelve months *from date, for $673.37 each ; and also to secure an account for money advanced and liabilities incurred by Traber & Aubery, to and for Henry Traber, amounting to between $200 and $300, and on which it is claimed there is due, after deducting some credits, near $200.
The bill'in this case was filed on June 4, 1849, charging the several mortgages and transfers made by Henry Traber to Traber A Aubery as fraudulent and void, and also charging that the sale of the store to Cornelius Baird was fraudulent, and without any consideration; that Baird was a man of no means; and that the whole proceeding should be declared fraudulent and void; and praying, in that alternative, that if the securities of Traber & Aubery should be held valid, that inasmuch as they, Traber & Aubery, had a security on two funds, the two notes of Baird and *461 the mortgage on the personal property, in addition to the mortgage on the house and lot, they should be compelled to exhaust the other securities before they resorted.to the house and lot, on which alone the complainants had a lien.
Some time in 1850, some six or eight months after the filing of the bill (the time is not definitely stated), Traber & Aubery delivered up to Henry Traber the two notes of Báird, which they had received as collateral security; and Cornelius Baird, who is the only witness who speaks on that subject, states that that was the agreement at the time the notes were transferred; that in case they were not paid at maturity, they should be retransferred to Henry Traber. The bill calls on all the defendants to answer under oath. Henry Traber, Traber & Aubery, and Cornelius Baird, have all answered, denying all fraud in the sale and transfer of the store, as well as. in the giving and receiving the securities ; and from the view which we have taken of the case, we do not think it necessary to go into a detail of the evidence on which the complainants rely, as proof of positive fraud; nor to determine that question. The store of goods was retained by Baird until the-month of March, 1850, when he sold it to Samuel Smiley, who gave his notes therefor to the ^amount of $2,073.50, said notes being payable in October, 1850, 1851, and 1852.
In January, 1851, Smiley sold the same stock of goods to Jacob Traber, of the firm of Traber & Aubery, who paid for it by delivering to Smiley his notes given to Baird for its purchase.
The lot in the town of Rossville has been sold, by order of court, and the fund arising therefrom, with the exception of eight hundred dollars, belonging to Elliott, a prior lienholder, is now ready for distribution. And about this fund the principal controversy arises.
Now, it will be seen from the facts above stated, that Traber & Aubery received an amount of security, irrespective of the mortgage on the lot, greater than the amount of the liabilities they had assumed for Henry Traber, and bis indebtedness to them. Traber & Aubery had gotten possession, as would appear, of most, if not all the property (1) of Henry Traber, who was insolvent.(2) The Eassetts, who had a lien only on the lot on which they had made *462 their levy, had a clear right to compel Traber & Aubery to resort to those other securities, on which they, the Fassetts, had no lien, and to exhaust them before they could come on the lot. This the Fassetts attempted to do, by filing this bill. Long after the bill is filed, Traber & Aubery deliver over the two notes, corresponding precisely in amount with the two drafts, to Henry Traber, the debtor. If they had retained these notes they would have been compelled to apply the proceeds to the payment of their debt; and having, after the commencement of this suit, placed the notes beyond their control, as between them and the complainants, they are bound to account for their amount. Any other holding would permit them to commit a fraud on complainants.
Nor does it at all help the matter for the defendants, that the delivery of these notes was in accordance with a previous agreement. *A creditor has a right to secure himself by obtaining a lien on the property of a failing debtor; and if done fairly, he may thus obtain a preference over other creditors. (1) But in such a case it is necessary that the utmost good faith should be observed toward the rights of other creditors. The creditor must act solely for the purpose of securing himself, without interposing any barrier to the rights of others, except such as may be necessary to effect that object. (2) In this case the agreement was, that if the notes were not paid at maturity, they should be delivered over to the debtor; the effect of which was, that Traber & Aubery appropriated this property as against the creditors of Henry Traber, but to operate as their security or not, at his option.
The decree of the court, then, will be, that Traber & Aubery will be held to account for, as in payment of their claim on the lot, the amount of the two notes by them thus delivered up, and also to accountfor the personal property received under the mortgage ; and the complainants will be subrogated to their rights in the fund arising from the sale of the lot.
Decree accordingly.

 Brown & Co. v. Webb, 20 Ohio.

 Ohio Life Ins. and Trust Co. v. Reeder, 18 Ohio, 35; Greene v. Ramage, 18 Ohio, 428 ; 14 Ohio, 365.

 See Mitchell v. Gazzam, 12 Ohio, 335, per Read, J. The dictum of Read, J., in its broadest sense, seems to have been doubted. Curwen’s Cases Overruled, 26; Hull v. Jeffrey, 8 Ohio, 390; Wilcox v. Kellogg, 11 Ohio, 394; and see upon this subject, and the construction of the act of March 14, 1838 (Swan’s Stat. 717), the authorities referred to in the note to Brown & Co. v. Webb, 20 Ohio.

 See Brown & Co. v. Webb, 20 Ohio.